### Joseph McDonald et al. v. George E. Downs.

Decided February 6, 1907.

**1.—Grant—Location—Calls.**

Where none of the objects called for in a grant can be found upon the ground to determine its location, and the calls for its corners and boundary lines made in subsequent surveys are for lines running on different courses and corners to be fixed by different courses and corners to be fixed by different bearing trees from those named in the grant, its location is not fixed with such certainty as to enable those holding the grantee's title to recover land from those holding under a junior grant claimed to be in conflict with it.

**2.—Error—Findings of Fact.**

Errors in the findings of fact are not cause for reversal unless they control the result reached.

**3.—Decree—Divestiture of Title.**

It was not permissible to render judgment in favor of the defendant in a suit of trespass to try title, on his plea in reconvention asking for a divestiture of plaintiff's title, for all the land sued for by plaintiff, unless the tract to which defendant showed title was proved to include all that plaintiff sued for.

Error from the District Court of Travis County. Tried below before Hon. V. L. Brooks.

*R. E. Beckham* and *Robt. G. Johnson,* for plaintiffs in error.—The field notes of the James White and Martin White surveys, made by the same surveyor who made the Daniel Pharis survey, and who is deceased, are evidence of the location of the Daniel Pharis survey, called for in the field notes of said White surveys. Stroud v. Springfield, 28 Texas, 665; Cottingham v. Seward, 25 S. W. Rep., 797; Huff v. Crawford, 34 S. W. Rep., 609; Tucker v. Smith, 68 Texas, 478.

Title of possession issued under the Colonization Laws of Coahuila and Texas is a final title vesting the fee absolutely in the grantee; the conditions annexed to such titles are conditions subsequent, and nothing remained to be done to consummate the title of the grantee, though subject to forfeiture by proper proceedings for nonperformance. Hancock v. McKinney, 7 Texas, 452.

*Cobbs & Hildebrand,* for defendant in error.—Generally, the court did not err in rendering judgment for the defendant; for if the said Pharis survey could be established under the claims of plaintiffs in error, still it was shown that defendant was an innocent locator and purchaser. Evitts v. Roth, 61 Texas, 82; Adams v. Hayden, 60 Texas, 223; Parker v. Coop, 60 Texas, 112; Patty v. Middleton, 82 Texas, 586; Mast v. Tibbles, 60 Texas, 301; Brotherton v. Weathersby, 73 Texas, 471; Mullins v. Wimberly, 50 Texas, 457; Hawley v. Bullock, 29 Texas, 217; Hutchins v. Bacon, 46 Texas, 408; Paschal v. Perez, 7 Texas, 348; Watson v. Chalk, 11 Texas, 89; Guilbeau v. Mays, 15 Texas, 413; Lambert v. Weir, 27 Texas, 359; Moore v. Curry, 36 Texas, 668.

KEY, ASSOCIATE JUSTICE.—Joseph McDonald and others, plaintiffs, instituted this suit in the form of trespass to try title, to recover from George E. Downs, the defendant, a certain tract of land known as the Daniel Pharis league, alleged to be situated in Sabine and San Augustine Counties in this State. The field notes of the land sued for are given in the petition as follows:

"Beginning at an inner corner of the Martin White league of land lying mostly in Sabine County, Texas, said beginning corner being 245 varas eastward from the northeast corner of the Thomas Payne league in San Augustine County, Texas, thence northward with one of the west boundary lines of said Martin White league 443 varas to the most northern northwest corner of said Martin White league, and continuing northward in same course 5,572 6-10 varas in all to the N. E. corner

of said Daniel Pharis league. Thence westward at right angles to the line last described at 1,040 varas the east boundary line of the Armstead Chumney league, where it intersects and conflicts with the north boundary line of the Pharis league, and continuing westward in the same course in all 4,487 varas to the N. W. corner of said Daniel Pharis league, thence southward, parallel with the first described line of said Pharis league 5,572 6-10 varas to the north boundary line of said Thomas Payne league, thence eastward with the north boundary line of said Thomas Payne league 4,487 varas to the place of beginning."

The defendant answered by plea of not guilty, and averred that the claim asserted by the plaintiffs constituted a cloud upon his title, which he prayed to have removed, and to have title vested in him. There was a nonjury trial, resulting in a judgment for the defendant and the plaintiffs have appealed. The trial judge filed conclusions of fact, which are as follows:

"1. During the biennial term of 1834 and 1835, proceedings were instituted by Daniel Pharis, under the Colonization Law of March 25, 1825, to obtain a grant of one league of land from the Free State of Coahuila and Texas. These proceedings culminated in the survey of the land applied for on September 1, 1834. The description of said survey, as contained in said alleged grant is as follows, viz.:

"The tract of land surveyed to the colonist Daniel Pharis is situated on an eastern branch of the stream called Villar creek, and begins at the southeast corner of the survey marked J. J., this being the first corner of this survey, from which a gum tree of sixteen inches in diameter, bears south 60 west at a distance of 2 4-10 varas, and another gum of fourteen inches in diameter is to the north 8 degrees east; from there to the east there were measured 4,487 varas unto the line of the neighbor A. T. in which the second corner was formed, drove a stake from which a red wood tree 7 inches in diameter bears south 71 degrees west and a black gum of 20 inches in diameter is to the south 75 degrees east, at the distance of 4 5-10 varas; from there on the course to the north 5,572 6-10 varas and the third corner was formed, driving a stake, etc., from which a pine 20 inches in diameter bears south at the distance of 80 varas, and a black oak of 22 inches bears north 50 degrees east at the distance of four varas. From there to the west 4,487 varas unto the point of the fourth and last corner, which a pine of 20 inches in diameter bears north 39 degrees west 8 4-10 varas distant, and another pine of 22 inches in diameter bears north 50 degrees east. From there to the south 5,571 6-10 varas until arriving at the corner where this survey was commenced; thus completing the survey of the league of land which you command me to have surveyed. Of the aforesaid tract 8 labors belong to the class of arable land, and the remaining 17 to that of pasture, its configuration being that which the map represents. This grant was extended upon condition expressed therein, that within one year the grantee would construct fixed and permanent monument at every angle of the tract granted; and that he would cultivate it and populate it in conformity with the provisions of the law referred to above.

"2. The plaintiffs own whatever title the alleged Daniel Pharis grant conveyed to the land described in their petition,

"3. The evidence affirmatively shows that there is no such creek as 'Villar' creek on or in the neighborhood of the land described in the petition; and there is no evidence in the record showing the location on the ground of any of the natural objects or other surveys mentioned in the above description. Indeed, there is no evidence that such creek, natural object or other surveys exist anywhere; or that any monument exists or has ever existed at any angle of the land sought to be recovered by plaintiff.

"4. There is no evidence that plaintiffs, or anyone else, ever claimed the land described in their petition, or attempted to exercise acts of ownership over same, by virtue of the title alleged to have been extended to Daniel Pharis, prior to the institution of this suit on October 18, 1902.

"5. There is no map or sketch of any character attached to the testimonio extending said Pharis grant, and if any such sketch or map ever existed, the evidence does not show such map or sketch or any copy thereof.

"6. The Daniel Pharis league survey is not delineated on any official map of San Augustine County, or elsewhere. The grant is known in the General Land Office of the State as a 'lost league.' The survey was made by one David Brown, who is now dead; and who, subsequent to making said Pharis survey, made two other surveys known respectively as the Martin White league and the James White league.

"7. On September 17, 1835, David Brown surveyed the James White league, and described same as follows in the field notes thereof, viz.:

"Descriptive notes of a survey of a league of land made for Mr. James White, where he lives, by order of Geo. W. Smyth, Com. for the settlers of the frontier of Texas. Set stake for the first station of the above survey on Daniel Pharis north boundary, from which a red oak 18 inches diam. brs. N. 45 degrees E. dis. 11.8 varas; and another red oak 15 in. dia. bears West 6.4. Thence S. 81 degrees E. with D. Pharis E. north boundary 720 varas to a branch brs. S. 1040 to a stake, the second station, the N. E. corner of D. Pharis survey, from which a hickory 14 in. dia. brs. S. 46 E. dis. 58 vrs. and a pine 20 in. dia. brs. S. 45 degrees E. dis. 7.2; thence S. 9 degrees E. with D. Pharis east boundary 1972 to a stake the third station, from which a pine 14 in. dia. brs. S. 74 degrees W. dis. 7 vrs. and another pine 12 in. dia. brs. N. 73 W. dis. 6.2 vrs. Thence S. 81 degrees E. with Martin White's north boundary 1784 to the road to Zavala, 3270 vrs. to the fork of Bear Creek, brs. S. 3960, set a stake for the fourth station from which a hickory 8 in. dia. brs. N. 71 degrees east dis. 2.2 vrs.; and a pine 15 in. dia. brs. N. 41 degrees W. dis. 9 vrs. Thence N. 9 degrees E. 960 to a branch brs. W. 990, ditto 1040, ditto 5400, set stake for the fifth station, from which a pine 15 in. dia. brs. N. 23 degrees E. dis. 12 vrs.; another pine 16 in. dia. brs. N. 15 degrees E. dis. 15 in. diam. dis. 8 vrs. thence N. 81 degrees W. 2230 to the road to the town of Zavala 4985 to a stake on Armstead Chumney's west boundary, from which a pine 12 in. dia. brs. 870 degrees E. dis. 2.4; and another pine 24 in. dia. brs. S. dis. 1 vara. Thence S. 9 degrees W. 780 to a creek, 4 vrs. wide bears southwest 3420 vrs. with Armstead Chumney's west line to the place of beginning, containing one league of lands. Seven labors of this survey

fit for cultivation, residue pastural land. A James White survey is delineated on the map of San Augustine County, on file in the General Land Office of the State; but its location is not otherwise shown.

"8. On some date, which is not shown by the evidence, David Brown surveyed the Martin White league, and described same as follows in the field notes thereof, viz.:

"Field notes of a survey made for Martin White on the western head waters of Bear Creek. Set post in mound on Joses Hobdys east boundary, from which a post oak 12 in. dia. brs. N. 24 degrees east dis. 11 varas, and a red oak 15 in. dia. brs. N. 78 degrees east distance 4 8-10 vrs. Thence N. 9 degrees E. with Hobdys east boundary 346 8-10 vrs. to a pine 20 in. dia. line tree 701 vrs. Set post in mound from which a pine 12 in. dia. brs. N. 15 degrees east dis. 7 2-10 vrs, and a red oak 15 in. dia. brs. N. 62 degrees east dis. 9 vrs; thence N. 81 degrees W. with Joses Hobdys north boundary 733 4-10 varas to a hickory 15 in. dia. line tree 1673 8-10 vrs. a pine 12 in. dia. line tree 2253 6-10 varas. Set post in mounds from which a red oak 12 in. dia. brs. N. 73 degrees E. dis. 6 vrs. 2-10 and a maple 9 in. dia. brs. N. 15 degrees E. dis. 10 2-10 varas. This is at the S. E. corner of Thomas Payne's survey; thence N. 9 degrees E. with T. Payne's N. boundary 671 4-10 varas to a pine 15 in. dia. line tree 1822 8-10 varas to a gum 12 in. dia. line tree 2726. Set post in mound at Thomas Payne's N. E. corner and on Daniel Pharis south boundary, from which a pine 12 in. dia. brs. S. 18 degrees E. dis. 8 vrs.; and another pine 15 in. dia. brs. N. 22 degrees E. dis. 14 vrs. Thence S. 81 degrees E. with Daniel Pharis south boundary 106 4-10 vrs. to a gum 12 in. dia., a line tree 245 vrs. Set post in mound at S. E. corner of D. Pharis survey, from which a pine 10 in. dia. brs. N. 72 1-2 degrees east dis. 9 6-10 vrs., and another pine 30 in. dia. brs. S. 49 degrees E. dis. 7 vrs. Thence N. 9 degrees E. with Daniel Pharis east boundary 443 varas. Set post in mound on D. Pharis east boundary from which a pine 24 in. dia. brs. N. 73 degrees dis. 15 6-10 vrs. and another pine 15 in. dia. brs. S. 18 degrees dis. 2 8-10 vrs. Thence S. 81 degrees E. 506 vrs. to a black oak, 10 in. dia., line tree, 948 4-10 vrs. to a white oak 18 in. dia., line tree, 2464 6-10 vrs. to a post oak 10 in. dia., line tree 3120 vrs. to a creek, a fork of Bear Creek 5 varas wide, brs. S. 3753 6-10 vrs. to a pine 10 in. dia., line tree, 5127 vrs. to a branch 3 vrs. wide brs. S. 6280 vrs. Set post in mound from which a hickory 9 in. dia. brs. S. 83 degrees W. dis. 5 4-10 vrs., and a gum 12 in. dia. brs. S. 8 1-2 W. dis. 14 6-10 vrs. Thence S. 9 degrees W. 370 varas to a creek, a fork of Bear Creek 5 varas wide; bears a little west of south 735 2-10 varas to a beach 15 in. dia., line tree, 1475 vrs. to a gum 12 in. dia., line tree, 3753 6-10 vrs. to a hickory 12 in. dia., line tree 5770 varas. Set post in mound on Thomas Lindsey's north boundary from which a hickory 12 in. dia. brs. N. 64 degrees W. distance 4 varas and a pine 10 in. dia. brs. N. 15 degrees W. dis. 7 4-10 varas. Thence N. 81 degrees W. with Thomas Linsey's north boundary 422 4-10 vrs. to a post oak 15 in. dia., line tree 703 vrs. set post in mound at Owen Linsey's S. E. corner from which a hickory 12 in. dia. brs. N. 14 degrees E. dis. 5 varas, and a beech 12 in. dia. brs. N. 21 E. dis. 7 4-10 vrs; thence N. 19 degrees E. with Owen Linsey's east boundary 456 8-10 to a magnolia 15 in. dia., 990

line tree, to a creek, a fork of Bear Creek, 6 vrs. wide brs. a little west of south, 1802 vrs. set post in mound from which a beech 12 in. dia. brs. N. 26 degrees E. dis. 8 vrs., and a white 20 in. dia. brs. N. 20 degrees W. dis. 8 vrs. Thence N. 81 degrees W. 832 varas to a creek, a fork of Bear Creek 5 vrs. wide bears south 1512 vrs. to a white oak 20 in. dia. line 3476 varas to the place of beginning. Containing one league or sitio of lands, eight labors of which may be said to be temporal or fit for cultivation, balance pastural lands, growth oak, hickory, dogwood, gum, pine, etc. A Martin White league survey is delineated on the official map of San Augustine County, Texas, as used in the General Land Office; but its location is not otherwise shown.

"9. On some date in April, 1835, Wm. McFarland surveyed the A. Chumney league. A copy of the field notes of this survey, as on file in the General Land Office of the State bears the following endorsement below the signature of the surveyor, viz.: 'Note interference with Pharis began 472 varas from the front of Pharis on N. B. T. (950 varas in breadth and 5,000 in length) equals 4,750,000 sqr. var.'

"10. Defendant claims the land described in plaintiff's petition through the A. Chumney grant, and is the owner of same by virtue of said grant, unless plaintiffs are the owners thereof by virtue of the title extended by Daniel Pharis grant."

As conclusions of law the trial judge held (1) that the evidence failed to show that the land sued for was embraced in the Pharis grant; and (2) that the Pharis title had been abandoned before the grantee performed the conditions on which the grant was extended; and therefore plaintiffs were not entitled to recover.

*Opinion.*—The first assignment of error assails the first finding of fact wherein it is stated that the Pharis title culminated in a survey of the land, when, the assignment alleges, the undisputed evidence shows that a valid grant of the land surveyed was made to Daniel Pharis on September 2, 1834. It is true, as contended by plaintiffs, that a grant was issued to Daniel Pharis for the land described in the survey; and if it was intended by the use of the word "culminated" to indicate that nothing further was shown in reference to the Pharis grant, then that finding is, to that extent, erroneous; but it does not follow that the case should be reversed. And the same may be said in reference to the second assignment, which complains of the third finding of fact, wherein it is stated that the evidence affirmatively shows that there is no such creek as "Villar" creek on or in the neighborhood of the land described in the petition. While the evidence may not have shown affirmatively that there was no such creek, it failed to show that there was such creek; and as the burden rested upon the plaintiffs to identify the land sued for as a part of the Pharis grant, it devolved upon them to show the existence and location of the creek referred to, and not upon defendant to show its nonexistence.

There are some other assignments assailing the findings of fact, which are not regarded as tenable and are overruled.

The sixth assignment assails the trial court's conclusion of law to the effect that the evidence does not show that the land described in the plaintiffs' petition was embraced in the Pharis grant. What is denominated the first proposition under this assignment is, in fact, two ab-

stract propositions, which is not in accordance with the rules; one to the effect that where the evidence is conflicting the court's finding should be according to the preponderance of the evidence, and the other to the effect that where undisputed evidence establishes an alleged fact, the court should find in accordance with such evidence. It will be observed that in neither of these propositions is it asserted that the undisputed testimony, or even a preponderance thereof, established any fact. The second proposition under this assignment asserts that the field notes of the Jas. White and Martin White surveys made by Brown, the surveyor who made the Daniel Pharis survey, are evidence of the location of the latter survey. It is true that the field notes of the two White surveys, which are shown to be delineated upon official maps, and may perhaps be found upon the ground, do call for certain boundary lines of the Pharis survey; but it is not true that such calls necessarily establish upon the ground the location of the Pharis survey with that degree of certainty which would require a finding that the land described in the plaintiff's petition is part or all of the Pharis grant. The testimony given by the witness Hunnicutt, the chief draughtsman in the General Land Office, a surveyor and civil engineer, amply supports the court's finding on the question under consideration, and fully answers the plaintiffs' contention. He testified, in substance, that the Pharis survey could not be identified, mapped or patented because of the fact that it did not call for any other surveys or objects that appeared upon the official map by which its relative position could be determined. He illustrated by saying that it called to begin at the southeast corner of a survey marked J. J.; that it called to run to the line of A. T., and stated that he could find no surveys on the map answering to the description of J. J. or A. T. He also stated, in substance and effect, that he was unable to locate the Pharis by the calls for its lines contained in the two White surveys, for the reason that they called for the Pharis lines to run on different courses from those contained in the field notes of the Pharis, and called for corners with different bearing trees from those given in the Pharis field notes. Hunnicutt was corroborated by the testimony given by George Williams, another surveyor, and plaintiffs submitted no proof to the contrary.

The seventh assignment is addressed to the court's conclusion of law to the effect that the Pharis title had been abandoned. We do not consider it necessary to decide this question. If the trial court was correct, as we have held it was, in holding that plaintiffs had failed to show that the land described in their petition and sued for was embraced in the Pharis grant, then they were not entitled to recover regardless of the validity of the Pharis title.

Under the eighth assignment the proposition is advanced that the defendant was not entitled to a judgment divesting title out of the plaintiffs for all of the land sued for, and vesting it in the defendant. It was admitted that the plaintiffs were the owners of the Pharis title, and that the defendant was the owner of the Chumley grant. The proof failed to show that the Chumley grant includes all the land described in the plaintiffs' petition, and for that reason it was error to render judgment vesting title in the defendant to all the land sued for.

Therefore the judgment will be reformed, so as to relieve it from

that objection; but as no such objection was urged in the court below where it doubtless would have been corrected, the costs of the appeal will be taxed against the plaintiffs in error.

The ninth and tenth assignments complain because the trial court did not render judgment for the plaintiffs; but the questions presented under this assignment are, in substance, reiterations of questions already decided.

No reversible error has been shown and the judgment is affirmed.

*Reformed and affirmed.*