INFANTS ⟨⟩10—JUVENILE DELINQUENT—COMPLAINT AND INFORMATION—STATUTE.

Under Code Cr. Proc. 1911, art. 1195, directing that the trial of a juvenile delinquent shall be begun by complaint and information, where the indictment for burglary against a 17 year old youth was dismissed, and no complaint and information was filed against him charging him with being a delinquent child, judgment so declaring him was void.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 16.]

Application on behalf of Siverio Medrano for writ of habeas corpus. Writ granted, and relator discharged from custody.

W. F. Hendrix, of El Paso, for appellant. E. B. Hendricks, Asst. Atty. Gen., for the State.

MORROW, J. This is an application to this court for a writ of habeas corpus. On a previous day the court ordered the application filed and the cause set down for hearing to determine whether the court would issue the writ and what disposition it would make thereof. It was duly submitted on the day set for its hearing.

Appellant was indicted for burglary. He was shown to be under 17 years of age upon an investigation of an affidavit filed to that effect and the indictment dismissed. No information or complaint was filed against him thereafter, but by virtue of the same indictment he was in the juvenile court adjudged a delinquent child and his punishment assessed at confinement for not less than 2 years in the State School for the Training of Juveniles, at Gatesville, Tex. The matter is discussed in more detail in Ex parte Ramseur, 195 S. W. 864, this day decided. Article 1195, O. C. P., expressly directs that the trial of a juvenile delinquent shall be begun by complaint and information. The indictment having been dismissed, and there having been filed no complaint and information, the judgment declaring the party a delinquent child would be void because of the statute mentioned and because of the fundamental law. Article 1, § 10, of the Constitution.

It is therefore ordered that the writ be granted, and that relator be discharged from custody and be no longer restrained by reason of this proceeding. This order does not preclude holding him on any proper complaint that may be filed.

---

ROBBINS v. BELL et al. (No. 7725.)

(Court of Civil Appeals of Texas. Dallas. March 17, 1917. Rehearing Denied June 2, 1917.)

1. RAILROADS ⟨⟩412(4) — FENCING AGAINST STOCK—STATUTE.

A railway fence so out of repair that it will not exclude live stock is no fence within Vernon's Sayles' Ann. Civ. St. 1914, art. 6603, making railroads absolutely liable for the value of all live stock killed or injured by locomotives or cars unless the company has fenced its road, in which event it is liable only for injuries resulting from want of ordinary care.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1456, 1457.]

---

2. RAILROADS ⊙⟿443(2) — KILLING STOCK —
SUFFICIENCY OF EVIDENCE.

In an action against a railroad for killing a
mule, evidence *held* sufficient to justify the infer-
ence that defendant's train actually struck the
mule.

[Ed. Note.—For other cases, see Railroads,
Cent. Dig. § 1608½.]

3. RAILROADS ⊙⟿446(2) — KILLING STOCK —
QUESTION FOR JURY.

In an action against a railroad for death of
a mule alleged to have been struck on the road's
right of way, whether it was impossible for a
locomotive or cars to have inflicted such injury
as the animal received *held* a question of fact for
the jury.

[Ed. Note.—For other cases, see Railroads,
Cent. Dig. § 1628.]

4. NEW TRIAL ⊙⟿102(3)—NEWLY DISCOVERED
EVIDENCE—DILIGENCE.

In an action against a railroad for killing a
mule, the court properly denied defendant new
trial for newly discovered evidence, materially
affecting the controlling issue whether the mule
was struck by defendant's train, where the same
diligence that secured the evidence after trial
would have secured it before trial, the new wit-
ness being the son of a witness for defendant,
and two of defendant's counsel, prior to trial,
having on one or more occasions conferred with
him concerning his father's testimony, during
which counsel did not ask him concerning any
knowledge he himself had of the matter.

[Ed. Note.—For other cases, see New Trial,
Cent. Dig. §§ 207, 212.]

Appeal from Limestone County Court; J.
E. Bradley, Judge.

Suit by Mrs. J. P. Bell and others against
J. W. Robbins, receiver of the Trinity &
Brazos Valley Railway Company. From a
judgment for plaintiffs, defendant appeals.
Affirmed.

Thompson & Barwise, of Ft. Worth, and
G. Scott Reed and C. S. Bradley, both of
Groesbeck, for appellant. A. B. Rennolds,
of Mexia, for appellees.

RASBURY, J. This is a suit for damages
for the value of a mule alleged to have been
negligently killed by appellant. The suit
originated in justice court, and upon trial
there resulted in verdict for appellees for
$175. Appeal was had to the county court,
where upon trial de novo before jury ver-
dict was again for appellees, but for $85,
followed by similar judgment, from which
this appeal is taken.

The negligence alleged was that the fence
inclosing appellant's line of railway was out
of repair, thereby permitting appellees' mule
to enter upon appellant's right of way, and
that said mule while thereon was struck by
one of appellant's locomotives and trains, so
injuring him that he died as a result thereof.

It will not be necessary to recite appellant's
pleading since counsel for appellant concede
appellees' ownership of the mule and that the
fence was negligently permitted to be out of
repair. It is contended, however, that the
facts developed by the evidence are wholly
insufficient to support or justify the verdict

of the jury that the mule was injured by
appellant's moving train, and that the court
should have directed verdict for appellant,
which was requested and refused by the court;
such action being properly assigned as error.
The verdict of the jury finds its support in
the testimony of several witnesses, and the
material facts fairly deducible from their
testimony are in substance these: Preceding
the injury appellees' mule was at large in a
cornfield or pasture adjacent to and separat-
ed from appellant's right of way by its
fence. Subsequent to the alleged injury ap-
pellees received word that the mule was in-
jured, and commenced a search for it and an
investigation of how it was injured. The
mule was found dead in the pasture, having
died presumably from loss of blood. In sup-
port of appellees' theory that it was injured
on the railway track four or five panels of
the right of way fence between the pasture
and appellant's right of way were down so
as to permit the entry of stock. Witnesses
were able to track the mule due to the fact
that his hind feet were and his front feet
were not shod. They tracked him from the
pasture through the fence where it was down
onto the right of way to a gate beyond where
he entered, and thence on and in the center
of the railroad tracks, where they discover-
ed a few drops of blood. From this point
they found his tracks where he came off the
track. Also at said point they found inside
the rails a sliver or piece of the animal's hoof.
About 15 feet from where the mule went off
the tracks they found on the right of way
a small pool of blood. Just before the mule
got to the gate (which was used as a means
of ingress and egress to and from appellees'
pasture across appellant's track), and which
the animal had passed in going upon the
tracks, witnesses found another pool of blood.
At the gate on the inside of appellees' pasture
they found another and a large pool of blood.
From there the mule went about 250 yards
and laid down in the road. From the last
point the mule went to a tank for water, and
thence to a little ravine, where he was found
dead. An examination of the mule's injuries
disclosed that the leg was cut or mashed off
just above the hoof. The skin was split, the
bone cut, and the hoof was held to the leg
by a tendon or ligament. There were no
other wounds or abrasions on the body of
the mule. A train passed through Mexia
and over the place where it was claimed ap-
pellees' mule was injured about 8 or 9 o'clock
p. m. preceding the night of the day appellees
discovered the injured mule.

In contradiction of appellees' theory of the
cause of the injury much testimony was ad-
duced tending to show that appellees' mule
was suffering with foot rot; that the joint
or hoof was pulled apart or from its socket,
and not cut or mashed; that no bones in the

foot, leg, or joint were broken; also testimony tending to show that, due to the construction of the cowcatcher attached to the locomotive, it was impossible for such injuries to have been inflicted upon the animal as were inflicted. We do not detail the facts deducible from such testimony for the reason that, while it would have supported a verdict for appellant, it cannot be of assistance in determining whether appellees' testimony is sufficient to support the jury's verdict. Recurring then to appellant's proposition, are the facts related wholly insufficient to show that the mule was struck and injured by one of appellant's trains? In such connection it is to be remembered that by article 6603, Vernon's Sayles' Civ. Stats., railways are absolutely liable for the value of all livestock killed or injured by their locomotives or cars, unless such company has fenced its road, in which event it shall be liable only for injuries resulting from a want of ordinary care. Appellant's road was fenced, but it is admitted that it was out of repair and would not exclude live stock.

[1] A railway fence in such condition is no fence. M., K. & T. Ry. Co. v. Tolbert, 100 Tex. 483, 101 S. W. 206. As a consequence, unlike those cases where stock are injured upon public crossings while at large, or where they are by the negligence of others upon a fenced right of way, no question of negligence can arise, since by the statute the railroad is absolutely liable. Railway Co. v. Tolbert, supra. The sole inquiry in such cases is: Was the animal injured or killed by the locomotives or cars of the railroad company? Such is the inquiry here. Appellant relies upon the case of T. & P. Ry. Co. v. King, 45 Tex. Civ. App. 215, 99 S. W. 1031, decided by this court, where it was held that the verdict was unsupported by the facts. The facts in that case and the one at bar are, however, quite dissimilar. First, it may be said that in the case cited there was the issue of negligence vel non, since the animal in that case was killed in the corporate limits of the town of Terrell, wherein stock was by valid ordinance prohibited from running at large, and the opinion, in effect, states there was no evidence tending to show that, if the mule was struck, it was due to the negligence of the railway. See, also, G., C. & S. F. Ry. Co. v. Anson, 101 Tex. 198, 105 S. W. 989. Further, in King's Case, supra, on the issue of whether the railway locomotives or cars actually struck the animal, it appears that, while tracks similar to those of the injured animal were found upon the tracks, together with hair and signs of blood, there was a total absence of injury or abrasion of any character upon the animal or any evidence tending to show that a train had passed during the time it was shown the animal was probably injured. We made a similar holding upon similar facts in Stewart v. T. & P. Ry. Co., 165 S. W. 559. In the case at bar, however, the testimony is not wanting in the essential facts shown by the cases cited. Here, not only is as much shown as was in those cases, but in addition it is shown not only that the animal's tracks and blood were upon the railroad tracks, but also a sliver or portion of its hoof. Further, a train was shown to have passed the point where the animal was injured at the time it probably was injured. Also there was upon the animal wounds and abrasions that could have been inflicted by a train, since it was shown that the skin at the place of injury was split, the leg bone cut, and a part of the hoof cut off. Further, unlike the cases cited, the progress of the mule from the track where the first blood and the sliver was found was plainly marked with blood.

[2] To hold that from such facts and circumstances the jury could not legitimately draw the inference that appellant's train actually struck the animal would not, in our opinion, be warranted in view of the limitations imposed upon appellate courts concerning the weight to be attached to questions of evidence. The jury's finding cannot, as argued, be said to be mere conjecture, when the character of the injuries and the tracks, the blood, and the portion of the hoof upon the tracks are considered. It seems to us that any explanation other than contact with the locomotive and cars would be equally conjectural. But we also believe that a finding either way would find support in the facts and circumstances disclosed at trial, and that it cannot, as a consequence, be said that the verdict is founded on conjecture.

[3] Whether it is impossible for a locomotive or cars to have inflicted such an injury on the animal as was inflicted, as is maintained by counsel for appellant, it seems to us, is itself a question of fact for the jury. They could have said it was. We cannot, in the light of the testimony, say it was not. It is conceivable that all manner of railway accidents may happen by which animals may lose leg or foot. In the light of observation and common knowledge, we know that railway accidents are constantly depriving human creatures, who are assumed to have greater intelligence than animals, of arm or hand or leg or foot. That similar accidents might occur to animals does not seem to us impossible.

[4] It is next urged that the court erred in not granting appellant a new trial because of newly discovered evidence materially affecting the controlling issue in the case. All of the testimony tended to show that the only train which could have struck appellees' mule passed the pasture between 8 and 9 o'clock p. m. After trial Mason Vestal, by affidavit, deposed, in effect, that he was at the residence of appellee when said train passed through her pasture, and at that very time the mule alleged to have been injured was near the barn of appellees in plain sight

of affiant. Mason Vestal was the son of A. A. Vestal, a witness for appellant. Two of counsel for appellant prior to trial had on one or more occasions conferred with Mason Vestal concerning the testimony of his father, during which counsel did not interrogate him concerning any knowledge he had of the matter, nor did said Mason Vestal himself divulge the facts recited in his affidavit. It occurs to us that the facts fail to show any diligence on the part of appellant. The same diligence that secured the evidence after trial would have secured it before trial. The opportunities to have secured it before trial were the same as those after trial. It is elementary that diligence before trial must be shown. Further, much force is, and should be, given the trial judge's action in such cases.

Finding no reversible error in the record, the case is affirmed.